**Robert M. TRAVIS, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 01–3105.**

United States Court of Appeals, Federal Circuit.

Jan. 29, 2002.

Before GAJARSA, LINN, and PROST, Circuit Judges.

## DECISION

PER CURIAM.

Robert M. Travis appeals from the final decision of the Merit Systems Protection Board ("MSPB" or "Board"), sustaining the Office of Personnel Management's ("OPM") denial of his claim for disability retirement benefits under the Civil Service Retirement System ("CSRS"). *See Travis v. Office of Personnel Management*, No. CH–831E–99–0454–I–1, (M.S.P.B. October 23, 2000) (final decision). Because this court is precluded from reviewing the underlying factual determinations in this case, and because Travis has alleged no substantial departure from important procedural rights or like error going to the heart of the administrative determination, we *affirm* the Board's decision.

## BACKGROUND

Travis was first employed by the Internal Revenue Service ("IRS") as a Revenue Officer in 1974 and became a Special Agent in 1978. In 1988, he transferred at his own request from Virginia to Milwaukee, Wisconsin. At first, this was a temporary posting, but it became permanent in 1989. As a condition to making his reassignment permanent, Travis agreed to accept a reduction in grade from GS–12 to GS–11. In 1990, he was again promoted to GS–12.

Travis appears to have experienced difficulties in Milwaukee, including increasing alienation and frustration with management and his co-workers. In February of 1994 Travis was passed over for promotion to GS–13, which left him "very upset." However, his job performance, as reflected in internal IRS documents, continued to be good through at least June 1994, when he received a performance evaluation in which he received a rating of at least "exceeds fully successful" in all categories. Travis' job performance began to noticeably worsen in the latter half of 1994, particularly after his superior questioned him about a credit card charge slip for the purchase of gasoline, which ultimately led to an internal investigation of Travis.

Travis' performance seems to have further worsened in 1995. In March of that year, he allegedly began weeping uncontrollably before he was to qualify on the pistol range. It is unclear what state he was in: some reports describe him as distraught, others as positive and upbeat. In any case, he was allowed to qualify on his weapon by the special agent in charge of the training and received excellent scores. The IRS subsequently allowed Travis to carry his weapon.

In connection with the internal investigation triggered by the questionable credit card purchase of gasoline, IRS investigators interviewed Travis on April 5, 1995. He resigned from the IRS the next day, but rescinded his resignation the day after, citing extreme duress when he signed the resignation. Travis went on sick leave until some point in November of 1995, at which point his sick leave ran out and he was placed on administrative leave.

Travis was issued a notice of proposed removal in November 1995 on grounds of misconduct; the notice cited specific instances of misconduct, including six specifications of misuse of a government vehicle, three specifications of willful misuse of official time for personal reasons, and fifty-two specifications of the purchase of gasoline for personal use using a government-issued credit card. In response, Travis submitted a written reply with an attached clinical report. The District Director, however, found that the clinical report did not "justif[y] [Travis'] misconduct or substantiate[ ] a medical condition that would cause [the District Director] to believe that [Travis] was not aware that [his] behavior

was inappropriate or that [his] behavior was uncontrollable." The District Director sustained all the specifications, and Travis was removed on January 5, 1996.

Travis filed an application for disability retirement under CSRS on November 27, 1996, based on a belief that he was disabled from performing his duties as a Special Agent because of major depression. On July 28, 1997, the Office of Personnel Management ("OPM"), finding that Travis had failed to show that he met the criteria for entitlement to a disability retirement, denied his application. That decision was sustained on reconsideration on April 7, 1999. Travis then appealed to the Board. In an initial decision dated October 1, 1999, the administrative judge affirmed OPM's decision. On reconsideration, the Board was split, so that the initial decision became the final decision of the Board. This appeal followed. We have jurisdiction over Travis' appeal from the Board's final decision pursuant to 28 U.S.C. § 1295(a)(9) (1994).

## DISCUSSION

Generally, we must affirm a decision of the Board unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (2000). Our scope of review in an appeal from a Board decision regarding disability retirement benefits, however, is even more limited. Such appeals are governed by 5 U.S.C. § 8347(c), which provides that OPM "shall determine questions of disability ... arising under this subchapter. Except to the extent provided under subsection (d) of this section, the decisions of the Office concerning these matters are final and conclusive and not subject to review." 5 U.S.C. § 8347(c)

(2000). Subsection (d) governs involuntary retirement on the basis of mental disability and specifically provides that

[i]n the case of any individual found by the Office to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application *by an agency* for purposes of disability retirement under section 8337(a) of this title, the procedures under section 7701 shall apply and the decision of the Board shall be subject to judicial review under section 7703 of this title.

5 U.S.C. § 8347(d)(2) (2000) (emphasis added). Thus, in cases of retirement on the basis of physical disability, or in cases of voluntary retirement on the basis of mental disability (i.e., those in which the application is not made "by an agency"), we may not review the factual underpinnings of the Board's disability determination. *See Lindahl v. Office of Personnel Management,* 470 U.S. 768, 791, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985); *Bruner v. Office of Personnel Management,* 996 F.2d 290, 291 (Fed.Cir.1993). Review in such cases is only "available to determine whether there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination." *Lindahl,* 470 U.S. at 791, 105 S.Ct. 1620 (internal quotations omitted); *see also Bruner,* 996 F.2d at 291 (holding that this court may review the Board's disability determinations to decide whether or not the Board has followed proper legal and procedural standards).

Travis' application for retirement, although based on an alleged mental disability, was made voluntarily. Accordingly, we may not review the factual underpinnings of the Board's determination that Travis did not establish entitlement to disability

retirement benefits. 5 U.S.C. §§ 8347(c) and (d) (2000). On appeal, Travis does not allege "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination," *Lindahl,* 470 U.S. at 791, 105 S.Ct. 1620, but simply re-argues the merits of his case. We are statutorily precluded from conducting the review of the underlying facts that Travis seeks. Consequently, we must affirm the decision of the Board.